**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                    Case No. 14-20034

ERRIC DEVOHN WATKINS,

       Defendant.

_____/

**OPINION AND ORDER DENYING MOTIONS TO SUPPRESS EVIDENCE**

On January 23, 2014, a Grand Jury charged Eric Devohn Watkins with five counts, including: possession with intent to distribute a substance containing cocaine in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute a substance containing heroin in violation of 21 U.S.C. § 841(a)(1); maintaining a drug premises in violation of 21 U.S.C. § 856(a)(1); felon in possession of a firearm—armed career criminal in violation of 18 U.S.C. §§ 922(g)(1), 924(e); and possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).  The indictment also alleged criminal forfeiture pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). (Dkt. # 7, Pg. ID 16-22.)

Now before the court are three motions to suppress evidence filed by Watkins: (1) Motion for an Evidentiary Hearing and to Suppress Evidence Seized During Warrantless Stop (Dkt. # 20), (2) Motion to Suppress Evidence Seized During the Execution of an Invalid Search Warrant, or Alternatively, Motion for an Evidentiary

Hearing Pursuant to *Delaware v. Franks* (Dkt. # 21), and (3) Motion to Suppress Evidence Seized on Additional Grounds and for Evidentiary Hearing (Dkt. # 32).

In his first motion, Watkins requests that the court suppress the evidence seized during his January 13, 2014 arrest and the statements made subsequent to the arrest on the grounds that: (1) the arrest was not based on probable cause, (2) the arresting officers failed to comply with Mich. Comp. Laws § 764.13, (3) the arresting officers had an opportunity to obtain an arrest warrant but did not, and (4) the arresting officers conducted the arrest outside of their jurisdiction.  In his latter two motions, Watkins seeks to suppress the evidence seized during the January 13, 2014 search of the property located at 16615 Rossini Drive, Wayne County, on the grounds that: (1) the judge issued the search warrant based on false information contained in the affidavit, (2) the affidavit lacks sufficient information about the confidential informant, (3) there is no nexus between the property search and the evidence sought, (4) the information contained in the affidavit was stale, and (5) the officers engaged in improper forum shopping by seeking the search warrant from a court in Macomb County.[1]

On January 29, 2015, the court held an evidentiary hearing as to the Motion for an Evidentiary Hearing and to Suppress Evidence Seized During Warrantless Stop (Dkt. # 20) to determine (1) whether the officers acted beyond their statutory authority in arresting Watkins, and, if so, (2) whether the extraterritorial arrest violated the Fourth

---

[1]Watkins also argues that the exceptions to the Fourth Amendment's exclusionary rule do not apply.  (Dkt. # 21, Pg. ID 96.)  However, because the court finds that the search warrant was supported by probable cause and the search did not violate Watkins's Fourth Amendment rights, the court need not consider whether an exception to the exclusionary rule applies.

2

Amendment's prohibition against unreasonable searches and seizures.  (Dkt. # 37.)  For the reasons stated on the record and discussed below, the court will deny Watkins's three motions to suppress evidence.  (Dkt. ## 20, 21, 32.)

## I. BACKGROUND

On January 13, 2014, Macomb County Detective Daryn Santini submitted an affidavit to Judge Carl Gerds of the 38th District of Michigan and obtained a search warrant for the property located at 16615 Rossini Drive in the City of Detroit and County of Wayne.  (Dkt. # 24-2, Pg. ID 147.)  Detective Daryn Santini stated in the affidavit that he "received information from an anonymous source that Watkins was selling heroin out of his residence at 16615 Rossini in the City of Detroit."  (Dkt. # 24-2, Pg. ID 149.)  Detective Santini also stated that he began surveying the Rossini property on December 16, 2013.  (*Id.*)  On that date, he observed Watkins exit the property three times, "meet up with a vehicle," engage in "what appeared to be a hand to hand transaction," and then return to the property.  (*Id.*)  Likewise, the affidavit states that Detective Santini observed Watkins exit the Rossini property in the early afternoon of December 18, 2013 and that Detective Santini lost sight of him after Watkins turned north on "Shakespeare."  (*Id.* at 150.)

According to the affidavit, on January 5, 2014, a confidential informant told Detective Santini that he/she "could buy heroin from Watkins from his home at 16615 Rossini, Detroit."  (*Id.* at 150.)  Detective Santini organized a controlled buy in which the confidential informant exchanged with Watkins money for heroin.  (*Id.*)  The affidavit also states that Detective Santini organized a second controlled buy between the confidential informant and Watkins in which Watkins sold the confidential informant a

3

substance that tested "with a strong positive reaction for heroin." (*Id.*) The government claims that it obtained the search warrant at around 10:00 am on January 12, 2014, but the warrant is dated "1/13/14 NOON." (*Id.* at 147.)

At approximately 11:00 am on January 13, 2014, Detective Santini and other detectives from the Macomb County Sheriff's Office began conducting surveillance of Watkins's Rossini property. (Dkt. # 20, Pg. ID 77.) At around 1:30 pm, Watkins drove from the Rossini property several blocks to the parking lot of a bar and entered the bar. (Dkt. # 20, Pg. ID 78.) According to Detective Santini's testimony, Watkins crossed into Macomb County's jurisdiction during a portion of his drive to the bar, which was located in Wayne County. The affidavit states that Detective Santini confirmed that the subject driving the vehicle was Watkins and that Watkins was driving with a suspended license. (Dkt. # 23, Pg. ID 117.) At 2:30 pm, Watkins exited the bar, and officers accompanying Detective Santini arrested Watkins without an arrest warrant. (Dkt. # 20, Pg. ID 78.) The officers seized from Watkins a wallet, four cell phones, and $4,150. (*Id.*)

According to Watkins, the officers then drove him to a Home Depot parking lot, waited for a period of time, and then took Watkins to the Rossini property where they executed the search warrant. (Dkt. # 20, Pg. ID 78.) During the execution of the search warrant, the detectives seized, *inter alia*, a firearm, cocaine, heroin, drug paraphernalia, and eight cell phones. (Dkt. # 24, Pg. ID 127-37; Dkt. # 24-2, Pg. ID 151-51.) Later that day, Watkins made a statement to the officers which Watkins describes as "a somewhat inculpatory statement regarding his presence at 16615 Rossini. (Dkt. # 20, Pg. ID 79.)

## II. DISCUSSION

### A. Evidence Obtained as a Result of Watkins's Arrest

4

### i. Standard

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. For a warrantless arrest by law enforcement to be reasonable under the Fourth Amendment, there must be "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "The burden of showing probable cause to make a warrantless arrest is on the government." *United States v. Porter*, 701 F.2d 1158, 1165 (6th Cir. 1983).

Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir. 2002) ("The probable cause determination is essentially the same under Michigan law."). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. "There is no precise formula for determining the existence or nonexistence of probable cause; rather, a reviewing court is to take into account the 'factual and practical considerations of everyday life' that would lead a reasonable person to determine that there is a reasonable probability that illegality has occurred or is about to occur." *United States v.*

5

*Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) (quoting *Illinois v. Gates*, 462 U.S. 213,

231 (1983).  Probable cause requires "more than mere suspicion," and the arresting

officers must be able "to articulate concrete facts from which they infer a probability that

illegality has occurred."  *Id.*  However, "the probable cause requirement does not require

that [the officers] possess evidence sufficient to establish a prima facie case at trial,

much less evidence sufficient to establish guilt beyond a reasonable doubt."  *Id.*

### ii. Analysis

#### 1. Probable Cause for the Arrest

Detective Santini had probable cause at the time of Watkins's arrest to believe

that Watkins had been driving with a suspended license in violation of Mich. Comp.

Laws § 257.904 *et seq.*  Detective Santini stated in his January 13, 2014 report that he

observed Watkins drive his vehicle from the Rossini property to the bar and that he was

aware Watkins had a suspended license. (Dkt. # 23, Pg. ID 117.)  In *United States v.*

*Campbell*, 486 F.3d 949 (6th Cir. 2007), the Sixth Circuit held that a warrantless arrest

did not violate a person's constitutional rights when the arresting officer "had probable

cause to believe that [the arrestee] had committed the misdemeanor offense of driving

without proof of license."  *Id.* at 958; *see also Atwater v. City of Lago Vista*, 532 U.S.

318, 352 (2001) ("If an officer has probable cause to believe that an individual has

committed even a very minor criminal offense in his presence, he may, without violating

the Fourth Amendment, arrest the offender.").

Watkins suggests that the justification for his arrest "appears to be that they

picked [him] up . . . en route to the execution of the search warrant for 16615"  and

contends that Watkins's arrest runs afoul of the Supreme Court opinion in *Bailey v.*

6

*United States*, 133 S. Ct. 1031 (2013). (Dkt. # 20, Pg. ID 78.) In *Bailey*, the Court held that "[d]etentions incident to the execution of a search warrant" are not reasonable "[o]nce an individual has left the immediate vicinity of a premises to be searched" unless there is some other rationale for the detention. *Id.* at 1042-43. Whether or not the detectives had some alternative subjective motive for arresting Watkins, the arrest was justified by probable cause that Watkins had driven with a suspended license. (Dkt. # 23, Pg. ID 117.) The officers' "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 594. "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action." *Whren v. United States*, 517 U.S. 806, 813 (1996) (citation omitted)).

Watkins further argues that the court should not find probable cause of Watkins's violation of Mich. Comp. Laws § 257.904 *et seq.* to justify the arrest because the officers did not arrest Watkins during the commission of the misdemeanor, but rather waited for him to exit the bar. (Dkt. # 20, Pg. ID 83.) This argument is without merit. There is no requirement that the arrest occur during the commission of a crime; rather, the Supreme Court has explicitly held that a warrantless arrest is reasonable under the Fourth Amendment when there is probable cause that a criminal offense "*has been*" committed. *Devenpeck*, 543 U.S. at 152. Moreover, the detectives observed Watkins violate Mich. Comp. Laws § 257.904 *et seq.* and waited one hour for him to exit a public establishment before arresting him in the parking lot. After witnessing Watkins commit a misdemeanor, the officers continuously pursued him without deviating for some other

7

purpose.  The officers made the reasonable decision to wait a short period of time for

Watkins to leave a public establishment in order to more safely execute the arrest.

### 2. Compliance with Mich. Comp. Laws § 764.13

Watkins also contends that the court should find that the arrest was not justified

by probable cause as to Watkins's violation of Mich. Comp. Laws §§ 257.904 *et seq.*

because the arresting detectives violated Mich. Comp. Laws § 764.13.  (Dkt. # 20, Pg.

ID 82-83.)  Section 764.13  provides, "A peace officer who has arrested a person for an

offense without a warrant shall without unnecessary delay take the person arrested

before a magistrate of the judicial district in which the offense is charged to have been

committed, and shall present to the magistrate a complaint stating the charge against

the person arrested."  Mich. Comp. Laws § 764.13.  According to Watkins, instead of

taking Watkins to a magistrate, the detectives drove Watkins to a Home Depot parking

lot, "waited for a period of time, and then took Mr. Watkins to 11615 [Rossini] where a

search warrant was executed."  (Dkt. # 20, Pg. ID 78.)  Likewise, Watkins was not

charged with violating Mich. Comp. Laws § 257.904 *et seq.*

Watkins was arrested at approximately 2:30 pm on January 13, 2014.  At 11:59

am on January 14, 2014, a criminal complaint was presented to Magistrate Judge Mark

A. Randon charging Watkins with drug trafficking offenses and firearm possession in

violation of 18 U.S.C. §§ 922(g)(1), 922(k), and 924(c) and 21 U.S.C. 841(a)(1). (Dkt. #

1, Pg. ID 1.)  In addition to § 764.14, the Fourth Amendment itself requires "a prompt

probable-cause hearing following a warrantless arrest" in order to constitute a

reasonable seizure. *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009).  The Sixth

Circuit and Supreme Court have found that "'[p]rompt' generally means within 48 hours

8

of the warrantless arrest." *Id.* (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). The Sixth Circuit has applied the 48 heuristic to Mich. Comp., Laws § 764.13's requirement that an arrestee be presented to a magistrate without unnecessary delay. *Id.* at 378-79. While delays of greater than 48 hours are presumptively unreasonable, "[p]eriods of less than 48 hours may also be held unreasonable, but [it] is the arrested individual's burden to prove the delay was unreasonable." *People v. Longmire*, No. 312071, 2014 WL 3547133, at *7 (Mich. Ct. App. July 17, 2014). "Examples of unreasonable delay are those for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.*

Watkins was taken before Magistrate Judge Randon within 24 hours of his arrest, so the burden is on Watkins to show that the delay was unreasonable. Watkins has not carried this burden. He has not set forth any arguments showing that the delay was for the purpose of gathering evidence to justify the arrest, motivated by ill will, or in any other way unreasonable.

Second, the choice to charge Watkins with the more serious drug trafficking and firearm possessions instead of the misdemeanor of driving without a license does not render the initial arrest unreasonable. *Cf. Alman v. Reed*, 703 F.3d 887, 900 n.3 (6th Cir. 2013) ("[A] wrongful-arrest claim can fail if probable cause existed for a crime other than the crime for which the individual was arrested or charged."); *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) ("[K]nowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendant[].").

9

### 3. Opportunity to Obtain a Warrant

Watkins also challenges the arrest on the grounds that the detectives "could have easily gotten an arrest warrant for Mr. Watkins and chose not to." (Dkt. # 20, Pg. ID 83.)  A warrantless arrest does not violate a person's constitutional rights so long as the arrest is supported by probable cause.  *Campbell*, 486 F.3d at 958.  An arresting officer need not show that he or she could not have obtained an arrest in order to render a warrantless arrest constitutionally firm.  *Id.*; *cf. United States v. Watson*, 423 U.S. 411, 423 n.12 (1976) (quoting approvingly an American Law Institute model code which did not "require an officer to arrest under a warrant even if a reasonable opportunity to obtain a warrant exist[ed]").  Moreover, the detectives observed Watkins drive his vehicle to a bar, and then waited one hour for him to exit the bar before arresting him.  It is not clear that the detectives had time to obtain an arrest warrant, particularly given that there is no reason to assume that the detectives knew how long Watkins would remain in the bar.

### 4. Jurisdiction

Last, Watkins states in his brief that "the[ arresting] officers were not in their jurisdiction, nor did they have local law enforcement assist them in this arrest." (Dkt. # 20, Pg. ID 83.)  "Whether the arrest was legal is a matter of Michigan state law." *Greenan v. Romeo Vill. Police Dept.*, 819 F. Supp. 658, 663 (E.D. Mich. 1993).  Under Michigan law, an officer has authority to make an arrest outside of his or her jurisdiction (1) if the arrest complies with the citizen arrest statute, Mich. Comp. Laws § 764.16, or (2) if the arrest complies with the Michigan Home-Rule Cities Act, Mich. Comp. Laws §§ 117.1 *et seq.  Greenan*, 819 F. Supp. at 663.  Pursuant to the citizen arrest statute, a

10

private citizen may make an arrest, *inter alia*, "(a) [f]or a felony committed in the private person's presence [or] (b) [i]f the person to be arrested has committed a felony although not in the private person's presence." Mich. Comp. Laws § 764.16. The Michigan Home-Rule Cities Act provides that an officer "may exercise the authority and powers of a peace officer outside the geographical boundaries of the officer's county" under certain circumstances, including "[i]f the officer has witnessed an individual violate [state law, an administrative rule, or local ordnance] within the geographical boundaries of the officer's county . . . and immediately pursues the individual outside of the geographical boundaries of the officer's county." Mich. Comp. Laws § 764.2a(c).

Watkins's arrest was lawful under both statutes. First, according to the affidavit and Detective Santini's testimony, Watkins committed a felony in the arresting officers' presence—the officers observed Watkins engage in hand to hand transactions with the confidential informant involving heroin. The arrest is, therefore, lawful under Mich. Comp. Laws § 764.16(a). Second, Detective Santini witnessed Watkins violate state law by driving with a suspended license for several miles in Macomb County's jurisdiction—specifically the westbound lanes of Eight Mile Road. The officers then "immediately pursue[d]" Watkins to the bar and arrested him when he exited the bar. The officers did not deviate from their pursuit of Watkins after observing him violate a state law within their jurisdiction. It is of no import that the pursuit involved a short period of time waiting for Watkins to exit a populated bar. Accordingly, the arrest is lawful under Mich. Comp. Laws § 764.2a(c) as well.

11

Furthermore, even if Watkins's arrest were in violation of state law, such violation would not, by itself, provide a basis for granting the motion to suppress.  In *United States v. Wright*, 16 F.3d 1429 (6th Cir. 1994), the Sixth Circuit held:

> [T]he appropriate inquiry for a federal court considering a motion to suppress evidence seized by state police officers is whether the arrest, search, or seizure violated the Fourth Amendment.  *The fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended.* This is so because the exclusionary rule is only concerned with deterring Constitutional violations. Furthermore, this rule promotes uniformity in federal prosecutions.

*Id.* at 1437 (emphasis added).

As discussed above, Watkins's arrest was based on probable cause and, therefore, did not offend the Fourth Amendment's prohibition against unreasonable searches and seizures.

**B. Validity of Search Warrant**

**i. Standard**

Watkins requests that the court suppress the evidence obtained during the search of the Rossini property on the ground that the search was executed pursuant to an invalid search warrant.  Under the Fourth Amendment, "no warrant shall issue but upon probable cause, supported by oath or affirmation."  U.S. Const. amend. IV.  "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (quoting *United States v. Jenkins,* 396 F.3d 751, 760 (6th Cir. 2005)).

12

"The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting . *Gates*, 462 U.S. 213, 231 (1983)).   "When reviewing a magistrate's determination that probable cause existed for the issuance of a search warrant, [a court] must determine, under a totality of the circumstances, whether 'the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002) (quoting *United States v. King*, 227 F.3d 732, 739 (6th Cir.2000)).   The court affords the magistrate judge's probable cause determination "great deference," and such determination "should not be set aside unless arbitrarily exercised."   *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986) (citations omitted).   A court's review of the sufficiency of the evidence supporting probable cause is "limited to examining the information contained within the four corners of the affidavit."

*United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009).
In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was  included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.* at 155-56.  "In order to obtain a [*Franks*] hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit," *United States v.*

13

*Stewart*, 306 F.3d 295, 304 (6th Cir. 2002), and that "the exclusion of the allegedly false statement . . .  results in a lack of probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998).  It is the defendant's burden to "specifically point to the disputed portions of the challenged affidavit, and . . . support these charges with an offer of proof." *Stewart*, 306 F.3d at 304.  "If at the hearing, the defendant can show by a preponderance of the evidence that the affiant either knowingly or with reckless disregard included a false statement in the affidavit, then any evidence and fruits of the search would be excluded." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 648 (6th Cir. 2003).

### ii. Analysis

The January 13, 2014 affidavit provided a substantial basis for Judge Gerds to determine the existence of probable cause.  The affidavit states that Detective Santini observed Watkins exit the 16615 Rossini property and engage in hand-to-hand transactions on multiple occasions and that Watkins engaged in two controlled buys organized by Detective Santini. (Dkt. # 24-2, Pg. ID 149-50.)  The affidavit also states that Detective Santini has conducted over 1000 drug investigations and that it is his "experience that persons involved in the illegal trafficking of controlled substances often store additional quantities of the controlled substances within their residence." (*Id.* at 149.)

### 1. False Statements Contained in the Affidavit

Watkins challenges the validity of the search warrant on the ground that Judge Gerds was misled by information in the affidavit that Detective Santini knew was false or would have known was false absent his reckless disregard for the truth.  (Dkt. #  21, Pg.

14

ID 93.) *See United States v. Leon*, 468 U.S. 897, 923 (1984) (stating that suppression of evidence obtained during a search conducted pursuant to a search warrant is appropriate where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth").

### a. Detective Santini's Observations of Watkins

Watkins asserts that the statement contained in the affidavit that Watkins exited 16615 Rossini three times on December 16, 2013 and made hand-to-hand transactions was false. (Dkt. # 21, Pg. ID 94.) To support his assertion, Watkins claims that it is implausible that Watkins was living at 16615 Rossini on December 16, 2013 because there was no heat or power at 16615 Rossini and the weather on December 16, 2013 was between 10 and 26 degrees Fahrenheit. (*Id.*) Watkins also asserts that it is untrue that Detective Santini saw Watkins in the early afternoon on December 18, 2013 because Watkins was at the DTE office at that time. (*Id.*)

Watkins's motion does not provide a "substantial preliminary showing" that Detective Santini lied about observing Watkins at the 11615 property on December 16 and 18, 2013. First, the assertion that "[t]here is no way" Watkins was living at 16615 Rossini on December 16, 2013 is overly broad. Despite the cold temperature on that date and the property's alleged lack of heat and electricity, Watkins may have nonetheless been residing at that property. In addition, Detective Santini could have observed Watkins exit and reenter 11615 Rossini "[d]uring the afternoon" of December 16, 2013 even if Watkins was not residing at the property on that date. (Dkt. # 24-2, Pg. ID 149.) Second, Watkins's statement that he "was at the DTE office at 3000 Gratiot

Avenue . . . having his power turned on" (Dkt. # 21, Pg. ID 94) does not conflict with Detective Santini's statement that he observed Watkins at 11615 Rossini "during the early afternoon" of December 18, 2013. (Dkt. # 24-2., Pg. ID 150.) The affidavit states that Detective Santini observed Watkins exit the Rossini property and turn north on "Shakespeare" before the detective "lost sight of him." (*Id.*) Detective Santini may have observed Watkins before his visit to the DTE office, after his visit, or on the way to his visit.

Moreover, even if Watkins's alternate account of December 16 and 18, 2013 constituted a substantial preliminary showing that portions of the affidavit are false, a defendant is only entitled to a *Franks* hearing if "a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side." *United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997) (citation omitted). The affidavit would support a finding of probable cause absent the statements about Detective Santini's observations of Watkins on December 16 and 18, 2013. The Sixth Circuit has "found that a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012). The instant affidavit contains descriptions of two controlled buys organized by and observed by the Macomb County detectives.

### b. The Controlled Buys

In the June 9, 2014 Motion to Suppress, Watkins contends that he "would likely be able to rebut the alleged controlled buys if he knew the specific dates they were done" (Dkt. # 21, Pg. ID 94) and that Detective Santini "used vague language in his

2:14-cr-20034-MFL-MKM   Doc # 40   Filed 02/22/15   Pg 17 of 28   Pg ID 247

affidavit . . . for the purpose of making it difficult or impossible to check the truthfulness of his factual assertions." (Dkt. # 32, Pg. ID 198.) The affidavit states that Detective Santini met with the confidential informant "[d]uring the week of 1/5/2014" to prepare for the first controlled buy, and it states that he met with the confidential informant "[w]ithin the last 48 hours" to prepare for the second controlled buy. (Dkt. # 24-2, Pg. ID 150.) There is no requirement for an affidavit to disclose the exact time of a controlled buy to afford a substantial basis for a judge's probable cause finding. Watkins's accusation that Detective Sanitni intentionally used vague language to make the verification of his affidavit more difficult is wholly unsupported and his statement that he would be able to "rebut the alleged controlled buys" falls far short of "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the affidavit." *Stewart*, 306 F.3d at 304. The *Franks* court explained:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.

*Franks v. Delaware*, 438 U.S. 154 (1978).

In his supplemental motion to suppress, Watkins again challenges the truthfulness of the affidavit's statements about the controlled buys. In this motion, he argues:

> The search and search warrant should be invalidated for false statements in the affidavit. There appear to be no contemporaneous written surveillance records, receipts, or logs, verifying the two "controlled buys" of heroin described by Det. Santini. There appear to be no contemporaneous written

17

> surveillance records, receipts, or logs, verifying the disbursement of money to Det. Santini from the government, the disbursement of these amounts to the alleged undercover agent, or any actual giving of any funds to Defendant Watkins. There appear to be no contemporaneous written records, receipts, or logs, verifying that any of the supposed heroin, supposedly received from Defendant, was logged in at any police agency as evidence.

(Dkt. # 32, Pg. ID 197-98.)

While one would expect a sheriff's office to maintain a record of controlled drug buys, Detective Santini was not required to include any such record in his application for a search warrant. *Franks* places the burden on the defendant to make an offer of proof that the probable cause finding was based on a false statement. 438 U.S. at 155-56, 171. If Watkins had presented any proof that the Macomb County Sheriff's Office does not, in fact, have any records supporting Detective Santini's statement that he orchestrated two controlled drug buys between a confidential informant and Watkins, the court might find that a *Franks* hearing would be needed to determine whether the search warrant was supported by a valid affidavit. However, unsupported statements that there does not "appear" to be any record of the controlled buys does not amount to proof. To hold otherwise would ignore the affidavit's "presumption of validity" and shift the burden to the government to prove the affidavit's validity. Accordingly, because Watkins's allegations that there is no record of the controlled buys are not accompanied by any proof, the court will not grant an evidentiary hearing to determine whether the search warrant was issued based on false information.

### 2. Information about the Confidential Informant

Watkins also challenges the affidavit on the ground that it lacks information about the confidential informant, his/her relationship with Watkins, and the controlled buys.

18

(Dkt. # 21, Pg. ID 94-95.)  Specifically, Watkins relies on the proposition that, "in the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532.  However, Watkins's argument misconstrues Sixth Circuit precedent.  Indicia of an informants' reliability and/or police corroboration is necessary when probable cause is based on "hearsay information from a confidential informant. *Id.*  Here, the probable cause finding is based on Detective Santini's personal observation of transactions between the informant and Watkins.  Detective Santini explained in the affidavit that, before the controlled buys, he spoke with the informant, met with him/her, searched his/her vehicle, and provided him/her with buy funds.  He stated that he observed the hand-to-hand transactions between Watkins and the informant himself and that the informant handed Detective Santini heroin following the buys.  (Dkt. # 24-2, Pg. ID 150.) These observations do no require any reliance on an informant's truthfulness or reliability.  The affidavit does state that the informant told Detective Santini that he/she "could buy heroin from Watkins." (*Id.*).  Even assuming these hearsay statements contributed to Judge Gerd's finding of probable cause, the statements were supported by significant police corroboration inasmuch as the officers observed the informant purchase heroin from Watkins.

### 3. Nexus Between the Property and Evidence

Next, Watkins argues that there was no nexus between the Rossini property and the evidence sought to justify the search because the alleged drug transactions occurred away from the property. (Dkt. # 21, Pg. ID 96.)  "To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular

19

place.' There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998). Stated another way, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable  cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

This critical element exists with regard to the search of Watkins's property.  To complete the controlled buys, as well as the transactions observed on December 16, 2013, Watkins exited 16615 Rossini, walked a short distance, conducted the transactions, and then reentered the property.  (Dkt. # 24-2, Pg. ID 149-50.)  Watkins claims that "[t]here is nothing in the affidavit that indicates drugs are ever in the house." (Dkt. # 21, Pg. ID 96.)  To the contrary, a common sense reading of affidavit provides a strong basis to believe there were drugs in the Rossini property, and the probable cause inquiry requires such a "practical, common-sense decision" in light of "all of the circumstances set forth in the affidavit." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citing *Gates*, 462 U.S. at 238.)  The affidavit does not describe Watkins acquiring any substances from a different location between leaving the property and engaging in the transactions.  It follows that Watkins possessed the heroin or other substances involved in the transactions while he was in 16615 Rossini.  Thus, there is reasonable cause to believe that the drugs were located in 16615 Rossini.

### 4. Staleness

Watkins claims that the search was unreasonable because the information in the affidavit was stale. (Dkt. # 21, Pg. ID 97.)  "Because probable cause to search is concerned with facts relating to a presently existing condition, there arises the unique problem of whether the probable cause which once existed has grown 'stale.'"  *Spikes*, 158 F.3d at 923 (internal quotation marks and citations omitted).  A warrant must be based on "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."  *Sgro v. United States*, 287 U.S. 206, 210 (1932).  To determine whether the information contained in an affidavit is stale, courts consider factors such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)."  *United States v. Brooks*, 594 F.3d 488, 493 (6th Cir. 2010) (citation omitted).

"In the context of drug crimes, information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'"  *Id.* (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)).  But "very quickly" can have different meanings in different contexts.  In *United States v. Hammond*, 351 F.3d 765 (6th Cir. 2003), the Sixth Circuit held that a "tip" that there was "dope" at a particular location was not stale even though it was received "at least five months" before the search warrant was requested because, "[i]n this case, the crime of drug trafficking is ongoing, the defendant's location is established, the drugs were likely to be there for an indefinite period of time, and the place to be searched constituted a secure operational base."  *Id.* at 771-72.  Similar to *Hammond*, in the instant case, Watkins's suspected drug

21

trafficking activities were ongoing—the affidavit states that Detective Santini observed five potential drug transactions occurring between December 16, 2013 and around January 11, 2014—and the affidavit suggests that the Rossini property was a secure operational base—it was Watkins's residence and he exited the property before each alleged transaction and returned to it after each alleged transaction.

While some of the alleged transactions discussed in the affidavit occurred almost one month before the search warrant was issued, the two controlled buys occurred approximately one week and two days, respectively, before the search warrant was issued.   Thus, even if the statements about the December transactions are stale, the information contained in the affidavit would not be rendered stale.  *See Spikes*, 158 F.3d at 924 (upholding a search of a property suspected of housing drug manufacturing and trafficking activities based on information ranging from four years to ten days old on the grounds that, "even assuming the information in the affidavit was in some respects 'stale,' the more recent events related therein refreshed this otherwise stake information").  *Compare id.* (citation omitted) ("Where recent information corroborates otherwise stale information, probable cause may be found.") *with United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003) ("In our case, the information was at most four days old at the time of the search, so there is no grounds for a staleness challenge.").

### 5. Forum Shopping

Last, in his supplemental motion to suppress, Watkins argues that Detective Santini improperly engaged in forum shopping by seeking the search warrant for the Rossini property from a judge in Macomb County, even though the Rossini address falls

within the jurisdiction of a different district court.  (Dkt. # 32, Pg. ID 200.)  Under

Michigan law, "[a]ny offense committed on the boundary line of 2 counties, or within 1

mile of the dividing line between them, may be alleged in the indictment to have been

committed, and may be prosecuted and punished in either county."  Mich. Comp. Laws

§ 762.3(1).  The judicial authority to issue a search warrant is even broader.  Mich.

Comp. Laws § 780.651 grants judges and district court magistrates authority to issue

search warrants where there is probable cause for such a search.  The Court of

Appeals of Michigan has held that this statute "does not limit the authority of the

warrants territorially" and that "[n]o constitutional or statutory limits exist which prevent

the district court from issuing search warrants to be executed outside the county of

issuance."  *People v. Fiorillo*, 491 N.W.2d 281, 282 (Mich. Ct. App. 1992); *State v. One-*

*Hundred Sixty-Two Thousand Dollars*, No. 201567, 1999 WL 33453427, at *2 (Mich. Ct

App. Mar. 16, 1999) (same).

Watkins notes that no statute gives the police authority to request a search

warrant from a court in a county other than where the location to be searched is located.

The Court of Appeals addressed this point in *Fiorillo*.  The Supreme Court of Michigan

has held that "Michigan has but one district court.  For the administration of the district

court, the State is divided into judicial districts."  *Judges of 74th Judicial Dist. v. Bay*

*Cnty.,* 190 N.W.2d 219, 224 (Mich. 1971) (interpreting Mich. Comp. Laws § 600.8101(1)

which established the district court).  Therefore, according to the Court of Appeals,

"[s]ince there is only one district court within the state, there is no need for explicit

statutory authorization allowing the district court to issue statewide search warrants."

*Fiorillo*, 491 N.W.2d at 282.[2]

Watkins asserts that, "[i]f the state statutes are held to allow an officer to go to any District Court he wants to get a warrant . . . , the statutes would be unconstitutional, because they would legitimize that which the US Constitution condemns, forum shopping."  (Dkt. # 32, Pg. ID 203.)  But Watkins cites to no authority supporting this claim.  He cites to Article III, § 2, cl. 3 of the United States Constitution and the Sixth Amendment, which "twice safeguards [a criminal] defendant's venue right."  *United States v. Cabrales*, 524 U.S. 1, 6 (1998); *Travis v. United States*, 364 U.S. 631, 634 (1961).  Article III, § 2, cl. 3 provides that all criminal trials, except for cases of impeachment, "shall be held in the State where the said Crimes shall have been committed," U.S. Const. art. III, § 2, cl. 3, and the Sixth Amendment guarantees a criminal defendant a trial "by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI.  A state statutory scheme which creates one district court, divided into judicial districts for administrative purposes, and which authorizes police officers to seek search warrants in any of those judicial districts, in no way conflicts with either of these constitutional safeguards. These constitutional

---

[2]The Fifth Circuit reached a similar conclusion regarding a state judge's authority to grant search warrants in *United States v. Conine*, 33 F.3d 467 (5th Cir. 1994).  In that case, the Fifth Circuit reversed a district court's determination that a search warrant was void under Texas law because the judge who issued the warrant did not have territorial jurisdiction to issue the warrant because the property to be searched was located in a different county.  *Id.* at 471.  The court reasoned that "[n]either the Texas Constitution, Texas statutes, nor Texas jurisprudence limits a district judge when issuing a search warrant to the judicial district he or she has been elected to serve" and "[d]istrict judges are employed, by the Texas Constitution, to function judicially throughout the state."  *Id.* at 471.

safeguards concern the venue for the criminal trial, and Michigan's statutory scheme does not upset the "general guide" that "[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *Cabrales*, 524 U.S. at 6. The court in which an officer obtains a search warrant does not affect the venue for the defendant's criminal trial. *See* Mich Comp. Laws § 600.8312 (providing that, in general, "venue in criminal actions for violations of state law and all city, village, or township ordinances shall be in the county where the violation took place"); Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.").

Courts' concern with forum shopping is not limited to the venue for trial. The Supreme Court expressed a concern for "magistrate shopping" in the context of search warrant applications. *United States v. Leon*, 468 U.S. 897, 918 (1984) ("One could argue that applying the exclusionary rule in cases where the police failed to demonstrate probable cause in the warrant application deters future inadequate presentations or "magistrate shopping" and thus promotes the ends of the Fourth Amendment . . . . We find such arguments speculative."). But the court has found no case law suggesting magistrate shopping implicates Article III or the Sixth Amendment. Rather, based on the *Conine* and *Leon*, it appears that an accusation of magistrate shopping raises a constitutional claim only inasmuch as it challenges the neutrality of the magistrate. *See Conine*, 33 F.3d 467, 471 (5th Cir. 1994) ("In response to [the defendant's] suggestion that forum shopping may result from today's ruling, we need

25

only caution that such would be subject to a fourth amendment challenge of the neutrality of the magistrate."); *cf. Leon*, 468 U.S. at 918 (stating that deterring magistrate shopping "promotes the ends of the Fourth Amendment").

Furthermore, in the instant case, Watkins has failed to show that Detective Santini engaged in improper forum shopping. *Cf.  Leon*, 468 U.S. at 918 ("[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis . . . ."). First, Detective Santini is a detective with the Macomb County Sheriff's Office, and he sought a search warrant from the 38th District Court in Eastpointe, which is located in Macomb County. Second, according to the government's response, the 38th District Court is "two and one half miles from the Rossini house" whereas the 36th District Court is "located approximately eleven miles away. (Dkt. # 33, Pg. ID 216.) Rather than implying improper motives, Detective Santini's choice to apply for a search warrant from the 38th District Court appears to have been motivated by convenience and familiarity. *Conine*, 33 F.3d at 471-72 (holding that there was no forum shopping where "the local district judges were unavailable and the officer and assistant district attorney sought a search warrant *from the nearest available district judge*" (emphasis added).[3]

---

[3]Watkins also claims that the search warrant "is invalid because it d[o]es not comply with the Fourth Amendment" as it was "signed by someone who lacks the authority necessary to issue search warrants." (Dkt. # 32, Pg. ID 207 (quoting *United States v. Scott*, 260 F.3d 512, 515 (6th Cir. 2001). This argument fails because, as discussed above, Mich. Comp. Laws § 780.651 granted Judge Gerds the legal authority to issue the search warrant. *See Fiorillo*, 491 N.W.2d at 282; *One-Hundred Sixty-Two Thousand Dollars*, 1999 WL 33453427, at *2.

Last, Watkins asserts that permitting police officers to seek search warrants from any district court in the state is inconsistent with Michigan's "blind draw" system for assigning cases. *See Mich. Ct. R.* 8.111(B); *Grievance Adm'r v. Fried*, 570 N.W.2d 262, 242 (Mich. 1997) ("Elementary principles of fairness have led to the adoption of a blind draw system for assigning cases in this state. Those same principles dictate that the process for assigning cases should not be interfered with absent good reason." (citation omitted)). Rule 8.111(B) provides:

> All cases must be assigned by lot, unless a different system has been adopted by local court administrative order under the provisions of subrule 8.112. Assignment will occur at the time the case is filed or before a contested hearing or uncontested dispositional hearing in the case, as the chief judge directs. Civil actions must be assigned within appropriate categories determined by the chief judge. The chief judge may receive fewer assignments in order to perform the duties of chief judge.

Mich. Ct. R. 8.111(B).

Watkins has failed to show how the Court of Appeals of Michigan's interpretation of Mich. Comp. Laws § 780.651 as granting judges and magistrates authority to issue search warrants for any location in Michigan, which interpretation is adopted by the court in the instant case, conflicts with Michigan's blind draw system. The issuance of the search warrant in the instant case in no way offended Michigan's blind draw system which concerns how cases are assigned to judges, not who can issue a search warrant.

## IV. CONCLUSION

For the reasons stated on the record and above,

IT IS ORDERED that the Motion for an Evidentiary Hearing and to Suppress Evidence Seized During Warrantless Stop (Dkt. # 20) is DENIED.

IT IS FURTHER ORDERED that the Motion to Suppress Evidence Seized During

the Execution of an Invalid Search Warrant, or Alternatively, Motion for an Evidentiary

Hearing Pursuant to *Delaware v. Franks* (Dkt. # 21) is DENIED.

IT IS FURTHER ORDERED that the Motion to Suppress Evidence Seized on

Additional Grounds and for Evidentiary Hearing (Dkt. # 32) is DENIED.

s/ Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 22, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 22, 2015, by electronic and/or ordinary mail.

 S/Lisa Wagner                              
Case Manager and Deputy Clerk
(313) 234-5522
